```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IVAN ROMERO,                                    :
                                                :
                            Plaintiff,          :
                                                :            1:15-cv-7583-GHW
            -against-                           :
                                                :            MEMORANDUM OPINION &
LOCAL UNION 272, DDS SERVICES INC.,             :                    ORDER
JOSE ROJAS, EDDIE ALERS, MATEW                  :
BROOKOLI, and FRED ALISON                       :
                                                :
                            Defendants.         :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/23/2016

GREGORY H. WOODS, United States District Judge:

**I.     INTRODUCTION**

Plaintiff, Mr. Ivan Romero, has worked as a parking garage attendant since 1994.  He was terminated on May 29, 2015, following a series of disagreements with his supervisors.  This was neither the first time Mr. Romero had been fired from a job nor the only time he had been involved in a dispute with an employer.  Indeed, Mr. Romero's 20-year career as a parking garage attendant was fraught with friction with his supervisors.  Mr. Romero claims that he was denied certain benefits, and was ultimately terminated, as a result of those disputes.

As a member of the Garage Employees Union Local 272 ("the Union"), Mr. Romero brought a number of issues to the Union's attention, requesting that the Union redress his grievances.  Mr. Romero alleges that the Union breached its duty of fair representation to him by ignoring and failing to respond properly to his grievances, and that the Union discriminated against him by failing to pursue his claims.  Mr. Romero also claims that he was denied certain benefits, including vacation days, sick days, healthcare benefits and, ultimately upon his termination, his pension and retirement benefits, to which he was entitled under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

Mr. Romero brings this suit against the Union, Local 272 Welfare Fund (the "Fund"), D.D. Services, Inc. ("DDS"), Jose Rojas, Eddie Allers, and Matthew Bruccoleri (collectively, "Defendants")[1] for (1) compensation for sick days and vacation days; (2) payment of his weekly wages retroactively to his termination date and until a date set by the Court; (3) pension benefits; and (4) $1,000,000 in compensatory damages. Defendants moved to dismiss Mr. Romero's complaint, arguing that he lacks standing to bring suit under ERISA and that the complaint does not plausibly plead a breach of the Union's duty of fair representation.

Because the complaint fails to plausibly allege that the Union discriminated against Mr. Romero or acted arbitrarily or in bad faith, Defendants' motion to dismiss Mr. Romero's breach of the duty of fair representation claim is GRANTED. However, Mr. Romero has plausibly pleaded a cause of action under ERISA for unpaid pension and healthcare benefits and, accordingly, Defendants' motion to dismiss that claim is DENIED. Defendants' motion to dismiss Mr. Romero's ERISA claims against DDS is GRANTED.

## II.   BACKGROUND

### A. Facts[2]

In June 1994, Mr. Romero began his career as a parking garage attendant. Amend. Compl., Ex. 1, Dkt. No. 20-1 at 19. Mr. Romero alleges that, "[a]s a prerequisite to employment . . . [he] joined Union Local 272 with the understanding that Local 272 will ensure that" he will be entitled to certain rights and receive certain benefits in connection with his union membership. *Id.* Union

---

[1] In their memorandum of law in support of their motion to dismiss, Defendants note that Mr. Romero misnamed several of the defendants and offer the correct party names. *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss ("Defs.' Br.") at 1. The Court takes judicial notice of the correct party names and will refer to them as they are named in Defendants' memorandum of law.

[2] Unless otherwise noted, the facts are taken from the amended complaint, Dkt. No. 20, Mr. Romero's declaration in opposition to Defendants' motion to dismiss, and documents attached thereto. The facts alleged in those documents are accepted as true for the purposes of this Rule 12(b)(6) motion. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

members' rights and benefits are outlined in in the Garage Employees Union Local 272 and Metropolitan Collective Bargaining Agreement, in effect since at least March 6, 2010 (the "CBA"). Dkt. No. 20 at 7.  As set forth in the CBA, Union members (1) have the right to receive a higher hourly rate for overtime hours exceeding an employee's 40-hour workweek; (2) are entitled to vacation days and paid sick leave under certain conditions; and (3) are eligible for certain pension benefits upon retirement.  Dkt. No. 20-1 at 22-23, 33 (CBA, Arts. XV, XVI, XXII).

The Union is charged with representing its members in disputes that arise between an employee and his or her employer.  The CBA outlines a process for resolving disputes that may arise between an employer and an employee.  *Id.*, Art. XX.  Covered disputes include an employer's failure to comply with the terms of the CBA as it pertains to member benefits and grievances that involve the discharge or suspension of an employee.  *Id.*

Over the course of his employment as a parking garage attendant, Mr. Romero alleges that he experienced many problems with his supervisors.  Mr. Romero alleges that he sought the Union's assistance to resolve those problems, but that the Union repeatedly declined to intervene.  In or about May 2000, Mr. Romero approached his supervisors at the parking garage to demand payment for overtime hours he worked.  Dkt. No. 20-1 at 21.  Mr. Romero states that he was told to "stop working and return home," and that he was subsequently "suspended without pay and without formal notification" in "an arbitrary action."  *Id.*  In a letter dated May 14, 2000, Mr. Romero informed the Union that he was subjected to "unfair treatment" by his supervisor and was the "target of another unfair attack and discriminatory practice at [his] job."  *Id.*  This was not the first time Mr. Romero solicited the Union's assistance in resolving that particular dispute; Mr. Romero had written to the Union "[o]n several occasions" but "ha[d] not received any assistance or satisfaction in correcting [the] injustice."  *Id.*  He implored the Union to "help[ ] [him] put a stop to this continuous attack on [his] rights as a worker and as a human being."  *Id.*

According to the amended complaint, Mr. Romero approached the Union again in 2001 following a workplace accident. Dkt. No. 20-3 at 28. Mr. Romero alleges that he was injured in the accident, which prompted his supervisor to send him home. *Id.*; Dkt. No. 20-2 at 1. Mr. Romero was summoned back to the garage approximately three weeks later and was "locked . . . in a small room" for approximately six hours. Dkt. No. 20-3 at 28. He was not allowed to leave. Dkt. No. 32 at 9 (stating that his supervisors held him "[h]ostage . . . for 6 hours in a small room"). Mr. Romero alleges that he was unable to work for at least two months and that he sought the Union's assistance in obtaining unemployment benefits. Dkt. No. 20-2 at 1, Dkt. No. 32-1 at 16. In response to that request, Mr. Romero asserts that the Union delegate informed him that he "will not fight [his] case." Dkt. No. 20-3 at 28.

In 2010, Mr. Romero was involved in another dispute with his employer. Mr. Romero alleges that he was summoned to his supervisor's office at the garage and was asked to "lie regarding established schedules or . . . be fired." Dkt. No. 20-3 at 28. Mr. Romero refused and was subsequently fired. *Id.* Mr. Romero again filed a complaint with the Union, and was again told that the Union would not pursue his claims. *Id.*

Most recently Mr. Romero worked at the Rapid Park garage. Dkt. No. 32 at 5. Mr. Romero alleges that he was once again informed that he must join the Union to "protect [his] labor rights and the union benefits . . . ." *Id.* In January 2015, Mr. Romero fell ill but received threats that he must continue to work. *Id.* Mr. Romero alleges that he contacted the Union for help on at least three separate occasions, and that his requests were denied. *Id.* at 6. In May 2015, Mr. Romero's supervisors instructed him to report to a different garage. *Id.* Upon arrival, however, Mr. Romero was informed that there was no position for him at that location. *Id.* Mr. Romero was terminated without prior notice on May 29, 2015. *Id.*; *see also* Dkt. No. 20-3 at 15.

In addition to his allegations against the Union, Mr. Romero also asserts that he was entitled to—but did not receive—vacation days while employed at the Rapid Park garage. Dkt. No. 20-3 at

4

15; *see also* Dkt. No. 20-3 at 11. Mr. Romero further alleges that he required medical treatment for injuries and underwent emergency dental work while employed at the garage, but that he was denied health and dental benefits to which he was entitled. Dkt. No. 20 at 3; Dkt. No. 20-3 at 11, 20. Indeed, Mr. Romero alleges that he was denied certain health benefits throughout the entire course of his career as a parking garage attendant and that the Union failed to pursue his grievances and "fulfill [its] obligations" to its members. Dkt. 20-3 at 18.

Mr. Romero alleges that, on several occasions after the Union failed to act on his behalf, he "took direct action before the National Labor [Relations] Board" (the "Board"), but that the Board dismissed his claims. Dkt. No. 32 at 1; Dkt. No. 32-1 at 28. Mr. Romero also alleges that on at least one occasion he appealed the Board's decision to the New York State Division of Human Rights. Dkt. No. 32 at 9.

### B. Procedural History

Mr. Romero commenced this suit in state court on August 26, 2015. Dkt. No. 1. Defendants removed the action to this Court on September 25, 2015. Following a conference held on October 27, 2015, the Court granted Plaintiff leave to file an amended complaint; Plaintiff filed his amended complaint on November 25, 2015. Dkt. Nos. 14, 20. On February 2, 2016, Defendants moved to dismiss Plaintiff's amended complaint. Dkt. No. 28. And on March 10, 2016, Mr. Romero filed a declaration in opposition to Defendants' motion. Dkt. No. 32. Defendants filed their reply on March 22, 2016. Dkt. No. 33.

## III. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this plausibility standard, the plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* Because he is proceeding *pro se*, the Court must liberally construe plaintiff's submissions and "interpret[ ] [them] to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . .").

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint. *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). "However, 'even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (internal quotation marks and citations omitted).

6

In addition, when evaluating a motion to dismiss a complaint filed by a *pro se* litigant, courts "may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12–CV–2907 (ER), 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted). Courts may also consider include "documents that a pro se litigant attaches to his opposition papers." *Agu v. Rhea*, No. 09–CV–4732 (JS)(AKT), 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (court may "consider factual allegations made by a *pro se* party in his papers opposing the motion"); *Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, No. 12 CIV. 3581 (NRB), 2016 WL 1049017, at *4 (S.D.N.Y. Mar. 11, 2016).

### B. ERISA Claims

The Court construes Mr. Romero's claim for unpaid benefits, including any pension benefits to which he might be entitled, as a claim brought under ERISA.

#### 1. Standing to Sue Under ERISA

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)) (alterations in original). "ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a person to whom benefits are owed under an ERISA plan may bring a civil action to recover them." *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009); *see also Kasraie v. Jumeirah Hosp. & Leisure (USA), Inc.*, No. 12 CIV. 8829 (KBF), 2013 WL 5597121, at *6 (S.D.N.Y. Oct. 10, 2013) (citing *Plumbing Indus. Bd., Plumbing Local Union No. 1 v. E.W. Howell Co.,* 126, F.3d 61, 66 (2d Cir. 1997) ("ERISA permits employees to sue to challenge the administration of their employers' benefit plans.")).

"To prevail under § 502, a plaintiff must show that (1) the plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied

7

severance pay [or benefits] owed under the plan." *Giordano*, 564 F.3d at 168 (citing *Guilbert v. Gardner,* 480 F.3d 140, 145-46 (2d Cir. 2007), *Rocco v. N.Y. State Teamsters Conference Pension & Ret. Fund,* 281 F.3d 62, 70-71 (2d Cir. 2002), *Feifer v. Prudential Ins. Co. of Am.,* 306 F.3d 1202, 1208 (2d Cir. 2002)).

### 2. "Participant" in the Plan

Mr. Romero has plausibly pleaded that he is a participant in the plan as defined by the statute. "A participant or beneficiary of an ERISA plan may bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan." *Gray v. Briggs*, No. 97 CIV. 6252 (DLC), 1998 WL 386177, at *4 (S.D.N.Y. July 7, 1998), *on reconsideration in part*, No. 97 CIV. 6252 (DLC), 1998 WL 635545 (S.D.N.Y. Sept. 16, 1998) (citations omitted). ERISA defines a "participant" as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

A former employee is a participant under ERISA if he "is or may become eligible to receive a benefit from an employee benefit plan." *Bilello v. JPMorgan Chase Ret. Plan*, 592 F. Supp. 2d 654, 663 (S.D.N.Y. 2009) (citations omitted). Courts in the Second Circuit "have held that, [i]f [a plaintiff] fall[s] into the category of former employees, [she] must have either: (a) a reasonable expectation of returning to covered employment, or (b) a colorable claim to vested benefits." *Bulovic v. Both*, 14 F. Supp. 3d 365, 380 (S.D.N.Y. 2014) (citing *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.,* No. 00–CV–7394, 2010 WL 8816299, at *10 (E.D.N.Y. May 28, 2010), *aff'd,* 710 F.3d 57 (2d Cir. 2013); *Caltagirone v. N.Y. Cmty. Bancorp.,* 414 F. Supp. 2d 188, 192 (E.D.N.Y. 2006), *aff'd,* 257 F. App'x. 470 (2d Cir. 2007)). "As the Supreme Court explained

almost twenty years ago, a former employee with a colorable claim to vested benefits may become eligible for benefits and may bring an action under ERISA." *Bilello*, 592 F. Supp. 2d at 663 (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 118 (1989)) (internal quotation marks omitted). "Termination of employment does not *per se* disqualify a claimant from bringing a suit under ERISA." *Gray*, 1998 WL 386177, at *4 (citing *Firestone*, 489 U.S. at 117-18).

Liberally construing the amended complaint to raise the strongest argument it suggests, the Court finds that Plaintiff has pleaded a colorable claim to vested benefits.[3] Mr. Romero's amended complaint alleges that he was a parking garage attendant for more than 20 years. Dkt. No. 20 at 3. The CBA sets forth certain healthcare and pension benefits, which Mr. Romero claims he is eligible to receive as a former Union member. *Id.* at 4. For example, under certain conditions, Union members are "entitled to be paid for his/her unused vacation and benefit days" and for sick days. Dkt. No. 20-1 at 10 (CBA Art. XVI). The CBA also sets forth Union's members' pension benefits, and states that employers must "make contributions to the Pension Plan . . . after an [e]mployee has been employed for three (3) years." *Id.* at 14 (CBA Art. XXII).

Here, Mr. Romero alleges that he was denied compensation for sick days and unused vacation days. Dkt. No. 20-3 at 20. Mr. Romero also alleges that he had joined the Union in 1994 and, therefore, earned a pension until he was terminated in 2015. Dkt. No. 20 at 4; Dkt. No. 20-1 at 19. Based on these allegations, the Court concludes that Mr. Romero has sufficiently demonstrated his standing to bring an ERISA claim as a plan participant. *Spilky v. Helphand*, No. 91 CIV. 3045 (PKL), 1993 WL 159944, at *6 (S.D.N.Y. May 11, 1993) (concluding that a plaintiff had standing to

---

[3] The Court need not consider the first prong of the "participant" test because Plaintiff has not alleged any facts that he expects to resume working as a parking garage attendant in the future. *See, e.g.*, *In re J.P. Morgan Chase Cash Balance Litig.,* 242 F.R.D. 265, 271 (S.D.N.Y. 2007) (declining to consider whether former employees had standing under ERISA based on the "reasonable expectation" prong where the plaintiffs did not "contend that they [would] ever return to covered employment"); *Caltagirone v. N.Y. Cmty. Bancorp,* 457 F. Supp. 2d 145, 148 (E.D.N.Y. 2006) ("There is no question that [the plaintiff] has no expectation of returning to covered employment. The question is, then, whether [plaintiff] has a colorable claim to vested benefits.").

sue under ERISA as a plan participant where he "allege[d] (1) employee status; (2) the establishment of an ERISA Plan while he was employed by defendants; and (3) during the time of the Plan's existence, some level of benefits became vested.").[4]

### 3. Claims for Compensatory Damages Under ERISA

Mr. Romero claims $1,000,000 in compensatory damages for "prejudices, damage caused to my person in 20 years." Dkt. No. 20 at 4. Mr. Romero may not recover such damages under ERISA.

It is well established that "damages available to ERISA plaintiffs are limited to (1) recovery of benefits due under the terms of the plan; (2) enforcement of rights under the terms of the plan; and (3) clarification of rights to future benefits under the terms of the plan." *Jiggetts v. CIGNA Healthcare*, No. 10 CIV. 4242 (JSR) (RLE), 2011 WL 747098, at *3 (S.D.N.Y. Feb. 1, 2011), *report and recommendation adopted*, No. 10 CIV. 4242 JSR, 2011 WL 746958 (S.D.N.Y. Mar. 1, 2011) (citations omitted); *see also Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148 (1985) ("Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims."); *Thomas v. Verizon*, No. 02 CIV. 3083RCCTHK, 2004 WL 1948753, at *5 (S.D.N.Y. Sept. 2, 2004), *aff'd*, No. 04-5232CV, 2005 WL 3116752 (2d Cir. Nov. 22, 2005). As the Second Circuit has held, "Section 1132(a)(3) permits money awards only in very limited circumstances. Classic compensatory and punitive damages are never included within other appropriate equitable relief." *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003) (citing *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210 (2002); *Lee v. Burkhart,* 991 F.2d 1004, 1011 (2d Cir. 1993)). Therefore, Mr. Romero cannot recover the requested $1,000,000 in compensatory damages for the alleged ERISA violations.

---

[4] The Court notes that, in reaching this conclusion, it has not made a determination as to the viability of Mr. Romero's claim. Rather, "the Court has simply determined that, regardless of the ultimate outcome, [Mr. Romero] has presented a colorable claim under ERISA within the confines of *Firestone* and, thus, [Mr. Romero has standing to sue] and the Court has subject matter jurisdiction over such claim." *Spilky*, 1993 WL 159944, at *7.

### 4. ERISA Claims Against DDS

Mr. Romero named DDS, the third-party administrator of his dental benefits as a defendant in this action. Mr. Romero alleges that DDS "continually ignored [his] concerns." Dkt. No. 20-3 at 18; *see also* Dkt. No. 32 at 19 ("Furthermore, after getting emergency dental treatment at a dentist (initially approved by DDS Services Inc., the Union's Health Care provider), DDS Services Inc. decided to only pay about 4 percent of the medical bill and consequently kept me from receiving badly needed medical care.").[5] DDS is not liable on the facts alleged in Mr. Romero's amended complaint.

"In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (citing 29 U.S.C. § 1132(d)(2)); *see also Kazazian v. Bartlett & Bartlett LLP*, No. 03 CIV. 7699 (LAP), 2006 WL 2563517, at *3 (S.D.N.Y. Sept. 6, 2006) (dismissing ERISA claims brought against employer and stating that plaintiff's "choice of defendant may be an accurate reflection of a personal grievance, but it is not an accurate reflection of the proper party to an action under ERISA."). Here, as in *Kazazian*, Mr. Romero's choice of DDS as a defendant "may be an accurate reflection of a personal grievance," but nevertheless is not a proper party to an action under ERISA. *Id.* Accordingly, Mr. Romero's claims against DDS are dismissed with prejudice.

### 5. Applicable Statute of Limitations and Time-Barred Claims

Defendants argue that Mr. Romero's ERISA claims should be dismissed in their entirety as time-barred. Defs. Br. at 7. "ERISA 'does not prescribe a limitations period for 29 U.S.C. § 1132 actions' to enforce rights to benefits." *Rotondi v. Hartford Life & Accident Grp.*, No. 09 CIV.6287 PGG, 2010 WL 3720830, at *7 (S.D.N.Y. Sept. 22, 2010) (quoting *Burke v. PricewaterhouseCoopers*

---

[5] Defendants refer to DDS as "a provider of dental services." Defs.' Br. at 11. Mr. Romero's filings, however, suggest that DDS is a third-party administrator of dental insurance benefits. *See* Dkt. No. 32 at 31.

*LLP, Long Term Disability Plan,* 572 F.3d 76, 78 (2d Cir. 2009) (per curiam)). "Therefore, the applicable limitations period is 'that specified in the most nearly analogous state limitations statute.'" *Burke*, 572 F.3d at 78 (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir. 1983)). As the Second Circuit has held, "New York's six-year limitations period for contract actions, N.Y. C.P.L.R. 213, applies as it is most analogous to § 1132 actions." *Id.*

Courts in the Second Circuit have taken two different approaches to determining "when a cause of action accrues under ERISA for improper denial of benefits." *Danecker v. Bd. of Trustees of Serv. Employees 32BJ N. Pension Fund*, 882 F. Supp. 2d 606, 609 (S.D.N.Y. 2012) (citing *Mitchell v. Shearson Lehman Bros. Inc.,* No. 97–cv–0526, 1997 WL 277381, at *3, *superseded on other grounds* (S.D.N.Y. May 27, 1997) (holding that a cause of action accrues when administrative remedies are exhausted); *Patterson–Priori v. Unum Life Ins. Co.,* 846 F. Supp. 1102, 1108 (S.D.N.Y. 1994) (holding that a cause of action accrues at the time of the initial denial of benefits)). The Second Circuit has yet to resolve this question. *See id.* at 609-610 (citing *Veltri v. Bldg. Serv. 32B–J Pension Fund,* 393 F.3d 318, 324–25 (2d Cir. 2004) ("We need not decide, however, which of the two approaches is technically correct.")). Regardless, the Court need not address this to decide Defendants' motion to dismiss for the following reasons.

First, with respect to his unpaid pension benefits, while it is unclear precisely when Mr. Romero was denied those benefits and whether he exhausted his administrative remedies, Mr. Romero alleges that he was terminated in May 2015. Any pension benefits would not necessarily have vested prior to that date and, therefore, the Court cannot conclude at this stage that Mr. Romero's claim for pension payments is untimely under either approach. Second, with respect to claims for unpaid medical and dental benefits, Mr. Romero alleges that he has not "see[n] any doctors because the union denied any benefits." Dkt. No. 20 at 3. Although Mr. Romero attached a selection of medical records to his filings—and pleads facts related to his injuries and medical care

needs—precisely when and whether Mr. Romero presented those grievances to the Union, whether the Union declined to pursue his claims, and whether Mr. Romero exhausted his administrative remedies is not discernable from the pleadings. Based on Mr. Romero's allegations, therefore, the Court cannot conclude that the claims are time-barred. Accordingly, Defendants' motion to dismiss Mr. Romero's ERISA claims for unpaid pension and for unpaid medical and dental benefits are denied.

### C. Duty of Fair Representation, Discrimination, and Retaliation

#### 1. Duty of Fair Representation

The Court construes Mr. Romero's claims that the Union did "not fulfill [its] obligations toward" Mr. Romero to allege a breach of the Union's duty of fair representation in violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). *See* Dkt. No. 20-3 at 18.

"Under federal common law, unions owe their members a duty of fair representation ('DFR'), which derives 'from the union's statutory role as exclusive bargaining agent.'" *Dillard v. SEIU Local 32BJ*, No. 15 CIV. 4132 CM, 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (quoting *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 74 (1991)). "The DFR requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *Vaca v. Sipes,* 386 U.S. 171, 177 (1967)).

"'[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'" *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)). The bar for finding that a union has breached this duty is high. "Judicial review of union action . . . must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of

their bargaining responsibilities." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (internal quotation marks omitted) (second alteration in original).

"'[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational.'" *White*, 237 F.3d at 179 (quoting *Air Line Pilots Ass'n*, 499 U.S. at 67). "This wide range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Id.* at 179 (internal quotation marks and citations omitted). "A union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge,* 403 U.S. 274, 301 (1971)). "'A union acts in bad faith when it acts with an improper intent, purpose, or motive." *Spellacy*, 156 F.3d at 126. Moreover, "[a] showing of '[b]ad faith requires a showing of fraudulent, deceitful, or dishonest action.'" *White*, 237 F.3d at 179 (quoting *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999)).

The facts asserted by Mr. Romero do not meet the high bar required to plead a breach of the duty of fair representation.[6] Mr. Romero alleges that the Union "ignored its obligations," "denied [his] labor rights," and refused to "fight [his] case." Dkt. No. 20-3 at 27-28. However, regarding his most recent dispute with the Rapid Park garage, Mr. Romero also asserts the "union scheduled 3 grievance meetings, but [a Union delegate] denied them all. [Two delegates] stated that the Union would not help him. . . ." Dkt. No. 32 at 2. Accepting these allegations as true, the amended complaint does not plausibly plead that the Union acted arbitrarily or in bad faith. At best, the allegations suggest that the Union took action on Mr. Romero's behalf and that Mr. Romero

---

[6] Because the Court concludes that, with the exception of Mr. Romero's 2015 complaint against the Rapid Park garage, his DFR claims are time-barred, the Court does not address the remaining alleged DFR violations.

disagreed with the outcome. Accordingly, Defendants' motion to dismiss Mr. Romero's claim for breach of the DFR is granted.[7]

### 2. Discrimination

Throughout his pleadings, Mr. Romero alleges that the Union's failure to act on his behalf is indicative of discriminatory treatment. "Under Title VII, it is unlawful for a labor union to discriminate against any individual because of his/her race, color, religion, sex or national origin." *Dillard*, 2015 WL 6913944, at *4 (citing 42 U.S.C. § 2000e-2(c)(1)).[8] "To bring a Title VII discrimination claim against a union concerning the manner in which the union handled a member's workplace complaints, the plaintiff must demonstrate that (1) the Union breached its duty of fair representation to plaintiff; and (2) that the Union's conduct was motivated by animus toward plaintiff's protected status." *Id.* (citing *McIntyre v. Longwood Cent. Sch. Dist.,* 380 F. App'x 44, 49 (2d Cir. 2010); *Cooper v. Wyeth Ayerst Lederle,* 106 F. Supp. 2d 479, 502 (S.D.N.Y. 2000); *Agosto v.*

---

[7] Defendants argue that Mr. Romero's DFR claim fails because he did not cooperate with the Union's grievance procedure. Defs.' Br. at 13-15. In support of their argument, Defendants rely on documents that they claim are in "Plaintiff's possession or that Plaintiff knew of or relied on in bringing the suit," including, for example, the "Board's dismissal of Plaintiff's Charge" (Ex. C to the Declaration of Danya Ahmed ("Ahmed Decl."), Dkt. No. 29-3). *Id.* at 7. The Board's dismissal letter states that Mr. Romero failed to appear at the Union's three scheduled grievance meetings. Ahmed Decl., Ex. C at 2. Defendants argue that, because Mr. Romero's amended complaint states that the Board had knowledge of the claim, the Court may consider this document in deciding their motion to dismiss without converting the motion into one for summary judgment. Defs. Br. at 7. The Court disagrees. "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). A document is deemed integral to the complaint if the plaintiff had (1) "actual notice" of the extraneous information and (2) "relied upon th[e] documents in framing the complaint." *Chambers*, 282 F.3d at 153 (internal quotation marks and citations omitted). However, "mere notice or possession is not enough" for a court to treat an extraneous document as integral to a complaint; the complaint must "'rel[y] *heavily* upon [the document's] terms and effect'" for that document to be integral. *Id.* (quoting *Int'l Audiotext*, 62 F.3d at 72) (emphasis added). Moreover, "[e]ven if a document meets the dual requirements of integrality—reliance and notice—a court still may not consider it on a motion to dismiss if there is a dispute 'regarding the authenticity or accuracy of the document' or 'the relevance of the document' to the dispute. *Osby v. City of New York*, No. 13-CV-8826 (TPG), 2016 WL 4372233, at *3 (S.D.N.Y. Aug. 15, 2016) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). That the amended complaint indicates that Mr. Romero had knowledge of the Board's proceedings falls short of establishing that the Board charge was integral to the complaint or that there is no dispute regarding its accuracy or authenticity. Accordingly, the Court did not consider the document in reaching its decision.

[8] The Second Circuit "typically treat[s] Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims." *Salamon v. Our Lady of Victory Hosp.,* 514 F.3d 217, 226 n.9 (2d Cir. 2008); *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 27 (2d Cir. 2014).

*Correctional Officers Benevolent Assoc.,* 107 F. Supp. 2d 294, 304 (S.D.N.Y. 2000); *Nweke v. Prudential Ins. Co. of Am., et al.,* 25 F. Supp. 2d 203, 220-21 (S.D.N.Y. 1998)). Therefore, courts in this district have routinely held that claims for breach of the duty of fair representation and claims brought under Title VII or the New York state or New York City laws prohibiting discrimination "plainly overlap in that they both prohibit discrimination; indeed, some courts essentially equate the two." *Agosto v. Corr. Officers Benev. Ass'n*, 107 F. Supp. 2d 294, 304 (S.D.N.Y. 2000) (citing *Tabois v. CWA Local 1101*, No. 89 CIV. 4921 (MBM), 1992 WL 131038, at *4 (S.D.N.Y. June 1, 1992); *Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 220 (S.D.N.Y. 1998); *Ross v. Commc'n Workers of Am., Local 1110*, No. 91 CIV. 6367 (LAP), 1995 WL 351462, at *6 (S.D.N.Y. June 9, 1995), *aff'd*, 100 F.3d 944 (2d Cir. 1996)); *see also Figueroa v. Foster*, No. 1:14-CV-8796-GHW, 2016 WL 2851335, at *5 (S.D.N.Y. May 12, 2016) (collecting cases); *Winkfield v. Parkchester S. Condo. Inc.*, No. 11 CIV. 983 RA, 2013 WL 2626788, at *3 (S.D.N.Y. June 11, 2013) ("The vast majority of cases in this Circuit, when dealing with state-law claims of discrimination against a union, have found such claims to be subsumed by the duty of fair representation and therefore preempted.") (internal quotation marks and citations omitted). Because Mr. Romero has not adequately alleged that the Union breached its duty of fair representation, he necessarily has not adequately pleaded a claim of discriminatory treatment.

Moreover, to survive a motion to dismiss, a plaintiff must allege facts supporting an inference of discrimination, and may "not simply rely on the union's failure to take the demanded actions on his or her grievance." *Dillard*, 2015 WL 6913944, at *7 (citing *Jenkins v. Arcade Bldg. Maint.*, No. 98 CIV. 3133 (RWS), 1999 WL 1051105, at *5 (S.D.N.Y. Nov. 19, 1999)). "[E]ven a *pro se* plaintiff 'must plead some facts that, if credited by a jury, would give rise to the conclusion she wants the trier to draw—namely, that *the reason the union refused to grieve her complaints* was because she was [a member of a protected group] as opposed to one of the many perfectly legitimate reasons why a union would decide not to proceed with a particular grievance.'" *Id.* (quoting *Robinson v.*

*Macy's*, No. 14-CV-4937 CM, 2014 WL 6997598, at *10 (S.D.N.Y. Dec. 5, 2014) (emphasis in original)).

Even had Mr. Romero sufficiently alleged a breach of the Union's DFR, he has not alleged facts to support an inference that the Union's refusal to pursue his claims was based on his race or age, or that the Union's actions were motivated by animus toward his protected status. Mr. Romero does not plead any facts tending to show that the Union acted with the requisite animus or that the Union was more likely to pursue other members' grievances because they did not belong to a protected group. For example, Mr. Romero conclusorily alleges that he was fired in 2013 by "mistake, perjury, discrimination" based on his "disability, country, age." Dkt. No. 20-2 at 12. Mr. Romero further alleges that "[t]here is discrimination on the part of the union and their delegates, by [his] complaints," and that "[t]he union has discriminated against [him] . . . [i]n comparison with my other companions providing them with their benefits except me due to my complaints." Dkt. No. 32 at 1, 4. However, Mr. Romero's only specific allegations of discriminatory conduct relate to his employers, not the Union.[9] *See, e.g.*, Dkt. No. 20-2 at 18 (stating that his managers told him he "[is] old no future in [the parking garage] go to another job."). And, as in *Dillard*, Mr. Romero's allegations "boil down to the claim that he was the victim of . . . discrimination at work and the Union failed to obtain redress for him." 2015 WL 6913944 at *8. Even under a liberal standard of review afforded to *pro se* litigants, the Court cannot construe Mr. Romero's amended complaint to adequately plead discriminatory treatment by the Union. Accordingly, Mr. Romero's discrimination claims are dismissed.

### 3. Retaliation

Mr. Romero also claims that the Union "retaliate[ed] against [him]. In comparison with [his] other companions providing them . . . and they enjoy benefits except [him] due to [his] complaints."

---

[9] The Court notes that Mr. Romero's employers are not named as defendants in this action.

Dkt. No. 32 at 2; *see also id.* at 4.  "To make out a prima facie case of retaliation by a union, a plaintiff must show that (1) she was engaged in an activity protected under Title VII and known to the union; (2) she suffered adverse union action; and (3) there was a causal connection between the protected activity and the union's actions." *Agosto v. Correctional Officers Benevolent Ass'n,* 107 F. Supp. 2d 294, 309 (S.D.N.Y. 2000) (citing *Yerdon v. Henry,* 91 F.3d 370, 377 (2d Cir. 1996)); *accord Nweke,* 25 F. Supp. 2d at 230.  "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."  *Id.* (quoting *Cruz v. Coach,* 202 F.3d 560, 566 (2d Cir. 2000)).

Mr. Romero's retaliation claims suffer from the same deficiencies as his discrimination claims.  Mr. Romero's retaliation claims are made against his employer, not the Union.  *See, e.g.*, Dkt. No. 32 at 11 (stating that he was fired from his job as a parking garage attendant after filing a complaint against his employer).  Mr. Romero has not alleged facts suggesting that the Union's failure to pursue his claims was tied to his complaints against his employers or his appeals of the Union's decisions to the Board.  Accordingly, to the extent Mr. Romero brings retaliation claims against the Union, those claims are dismissed.

### 4. Claims Barred by the DFR Statute of Limitations

"The statute of limitations for a breach of the duty of fair representation is six months." *Winkfield v. Parkchester S. Condo. Inc.*, No. 11 CIV. 983 RA, 2013 WL 2626788, at *4 (S.D.N.Y. June 11, 2013) (citing *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 155 (1983)).  "[T]he cause of action 'accrues no later than the time when plaintiff[ ] knew or reasonably should have known that such a breach of the duty of fair representation had occurred.'" *Id.* (quoting *Cohen v. Flushing Hosp. & Med. Ctr.,* 68 F.3d 64, 67 (2d Cir. 1995)).

Mr. Romero alleges that he was terminated on May 29, 2015, that he was "called and went to the Union" that day, and that "[o]n three separate occasions until June 12, 2015" he was informed by a Union official that the Union would not pursue his claims against the Rapid Park garage.  Dkt. No. 32 at 6.  Although Mr. Romero commenced this action in state court approximately three

months later on August 26, 2015, his allegations related to asserted violations of the Union's DFR extend back to 2001. *See, e.g.*, Dkt. No. 20 at 3 (stating that the events giving rise to Mr. Romero's claims took place in 2001, 2010, and 2015). Because the six month statute of limitations applies to Mr. Romero's claims, any DFR claims predating February 25, 2015 are dismissed as time-barred.

### D. Individual Defendants

In addition to the Union and DDS, Mr. Romero also named Union officials Jose Rojas, Eddie Allers, and Matthew Bruccoleri as defendants. Mr. Romero alleges that those defendants ignored his grievances and failed to pursue his claims against his employers—*i.e.*, that they breached a duty of fair representation. *See, e.g.*, Dkt. No. 20-3 at 28 ("Mr. Eddie Alders [sic], ignored my complaint against: Icon park . . . ."); *id.* ("Matthew Brucooleri [sic], ignored my complaint, in 2010, against sylvan [sic] Park."); *id.* ("I called the Union delegate[ ], Mr. Jose Rojas" who said, "'I will not fight your case.'").

"The Supreme Court has long held that 'union agents' are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process." *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir. 1999) (citing *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 247-49 (1962), *overruled in part on other grounds by*, *Boys Markets, Inc. v. Retail Clerk's Union, Local 770,* 398 U.S. 235, 241 (1970)). The Second Circuit has since held that individual union members are shielded from suits for breach of the duty of fair representation. *Id.*; *see also Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 388 n.10 (2d Cir. 2015).

To the extent that Mr. Romero is alleging ERISA violations against the individual defendants, those claims must fail as well. As discussed above, "[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli*, 887 F.2d at 1199. Neither the Union nor its delegates are proper parties in a suit under 29 U.S.C. § 1132(a).

Accordingly, Mr. Romero's claims against the individual defendants are dismissed with prejudice.

### E. Leave to Amend

Although Mr. Romero has already once amended his complaint, in this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Moreover, "leave to replead should be liberally granted to *pro se* litigants." *Vallen v. Plan*, No. 15-CV-0703(JS)(ARL), 2016 WL 482026, at *4 (E.D.N.Y. Feb. 4, 2016) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). Accordingly, the Court will allow Plaintiff to file a second amended complaint to the extent they can cure any of the defects in their first amended complaint with respect to those claims not dismissed with prejudice.

## IV. CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff is granted leave to file an amended complaint within 30 days from the date of this order.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 28.

The Court will mail Plaintiff a copy of this opinion.

SO ORDERED.

Dated: September 23, 2016  
New York, New York

GREGORY H. WOODS  
United States District Judge