UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

IVAN ROMERO,                                        :
                                                    :
                              Plaintiff,            :
                                                    :          1:15-cv-07583-GHW
        -against-                                   :
                                                    :          MEMORANDUM OPINION &
TEAMSTERS UNION LOCAL 272                           :                  ORDER
                                                    :
                              Defendant.            :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/25/19

**GREGORY H. WOODS**, United States District Judge:

Plaintiff Ivan Romero ("Plaintiff" or "Romero") filed this case, asserting claims against Defendant Garage Employees Union Local 272, I.B.T., sued here as "Teamsters Union Local 272," ("the Union"), for failing to assist him with a grievance against his employer in May 2015 and for failing to provide him with dental and pension benefits.

Because Plaintiff has raised a triable issue of fact regarding whether the Union acted in bad faith in processing his May 2015 grievance, Defendant's motion for summary judgment on Plaintiff's breach of the duty of fair representation claim is DENIED. However, because Plaintiff has not adduced evidence sufficient for a trier of fact to find that the Union acted with discriminatory or retaliatory intent in processing Plaintiff's grievance, Defendant's motion for summary judgment on Plaintiff's discrimination and retaliation claims under the ADA and ADEA is GRANTED. Finally, because Plaintiff has not sued a party which can be held liable for his denial of dental and pension benefits and because any attempt to amend the complaint to add the appropriate parties would be untimely and futile, Defendant's motion for summary judgment on Plaintiff's ERISA claim is GRANTED and Plaintiff's motion to amend his complaint is DENIED.

## I. BACKGROUND

The Court views the facts in the light most favorable to the non-moving party. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). Unless otherwise indicated, the following facts are undisputed.

The Union is a labor organization which represents parking garage workers employed by garage owners and operators who are members of the Metropolitan Parking Association, a multi-employer bargaining association with whom the Union has negotiated a collective bargaining agreement ("CBA"). Defendant's Local Rule 56.1 Statement, Dkt. No. 70 ("Def. 56.1"), at ¶ 1. Before May 29, 2015, Plaintiff was a member of the Union and a parking attendant at Payson Garage, operated by Rapid Park and located on East 68th Street. Def. 56.1 at ¶ 6.

Plaintiff claims that he went to the Union's offices on October 25, 2014, to seek assistance with a grievance against Rapid Park regarding his earned sick leave and overtime compensation.[1] Declaration of Ivan Romero, Dkt. No. 77 ("Romero Decl."), at ¶¶ 5, 8. According to Plaintiff, while at the Union's offices, he spoke to Jose Rojas ("Rojas"), the Union's "Recording Secretary" and a "Business Agent." *Id.* at ¶ 9. Plaintiff asserts that after he explained his situation to Rojas, Rojas told him, "They don't like you and I'm not going to help you." *Id.* at ¶ 10. Plaintiff also claims that the Union denied his request to file a grievance against Rapid Park. *Id.* Plaintiff then wrote a letter to the CEO of Rapid Park complaining about his issues with Rapid Park and the Union. *Id.* at ¶ 11. Plaintiff states that not long after he wrote the letter, the CEO of Rapid Park contacted him and told him that Rapid Park would resolve his dispute, although it never did. *Id.* at ¶ 12.

---

[1] For the sake of clarity, the Court notes that the Union has not addressed any of the facts averred by Plaintiff which relate to events that occurred prior to May 29, 2015, perhaps because it did not believe that such facts were relevant to the claims in Plaintiff's Second Amended Complaint. Accordingly, the facts as presented by the Court from the time period before May 29, 2015, are gleaned entirely from Plaintiff's declaration.

Plaintiff claims that after he wrote the letter to Rapid Park's CEO, both Rapid Park employees and the Union retaliated against him. *Id.* at ¶ 13. Specifically, he states that the Union refused to support him when Rapid Park improperly denied him accrued paid sick days in March, April, and May 2015. *Id.* at ¶¶ 16-20. He also claims that "on one occasion"—which occurred at some point between October 2014 and May 2015—a Rapid Park employee named Alex Ruiz ("Ruiz") told Plaintiff that he should find another job because "he had no future at Rapid Park." *Id.* at ¶ 22. When Plaintiff reported this incident to the Union, Rojas failed to investigate what had occurred and did not file a grievance or support Plaintiff in any action against Rapid Park. *Id.* at ¶ 23. Rojas states that he was not aware that Plaintiff had made any complaints about the Union prior to May 29, 2015. Declaration of Jose Rojas, Dkt. No. 67 ("Rojas Decl."), at ¶¶ 5, 8.

Both parties agree that on May 29, 2015, Plaintiff reached out to the Union for assistance regarding his employment. Def. 56.1 at ¶ 8. However, the parties' accounts of what occurred on May 29, 2015, vary. According to the Union, Plaintiff came to the Union office to discuss his employment status. Def. 56.1 at ¶ 7. Plaintiff completed a grievance form on which he listed both his current address and current phone number. *Id.* at ¶ 8. Plaintiff spoke with Rojas and told him that he had been terminated from his job but did not know why. Rojas Decl. at ¶ 6. Rojas then contacted Payson Garage supervisor Scott Evans ("Evans") and discovered that Plaintiff had been terminated for poor job performance, including an incident the day before, during which Plaintiff allegedly became belligerent and refused to open the garage door to allow a customer to exit the parking garage. *Id.* Evans indicated to Rojas that a termination notice had been issued to Plaintiff and that Rapid Park had no interest in reinstating Plaintiff. *Id.*

The Union claims that Rojas then communicated to Plaintiff that Rapid Park would not take him back to work and that the Union would schedule a grievance hearing with Rapid Park. Def. 56.1 at ¶ 12. Rojas notified Plaintiff that the meeting would be scheduled as soon as possible,

3

probably for Tuesday, June 2, 2015, and told Plaintiff that he would be sent a notice of the hearing date. Rojas Decl. at ¶ 7. Rojas denies that he ever told Plaintiff he would not help him with his grievance because he had filed grievances before. *Id.* at ¶ 8. According to the Union, Carmen Roman ("Roman"), a clerical staff member, scheduled Plaintiff's hearing for June 2, 2015, at 11:30 a.m. and sent notices of the hearing to both Rapid Park and Plaintiff on May 29, 2015. Def. 56.1 at ¶ 23. Roman mailed the notice to the address written on Plaintiff's grievance form. *Id.* at ¶ 24. There is no record of that notice being returned to the Union by the U.S. Postal Service. *Id.* at ¶ 25. The Union also states that Roman called Plaintiff on June 1, 2015, in order to remind him of the June 2, 2015 hearing. *Id.* at ¶ 26. Roman allegedly called two separate phone numbers for the Plaintiff—the first was the number he wrote on his grievance form, and the second was a number Roman found in the Union's dues records. *Id.* at ¶ 27. The Union also claims that Roman left three voicemails at the number written on Plaintiff's grievance form, leaving her name, the date and time of the hearing, and asking Plaintiff to confirm that he would attend the hearing. *Id.* at ¶ 28.

Plaintiff claims that early in the morning on May 29, 2015, he was working at Rapid Park when three Rapid Park employees—Ruiz, Ernesto Gonzalez, and Scott Stevens—told him to leave Rapid Park and "go work for Central," another parking garage company. Romero Decl. at ¶ 24. Ruiz allegedly told Plaintiff that he could go work at a garage on 57th Street and to tell the people at the garage that Ruiz had sent him there. *Id.* When Plaintiff's shift ended at Rapid Park, he went to the garage at 57th Street. *Id.* at ¶ 25. The manager at the 57th Street garage laughed at Plaintiff and told him that he could not work there. *Id.* Plaintiff then returned to Rapid Park and told Ruiz what had happened. *Id.* at ¶ 26. Ruiz threw up his hands and said, "I'm not HR," and then walked away from Plaintiff. *Id.* Plaintiff claims that he was not terminated from his job at Rapid Park and was never provided with a notice of termination.[2] Pl. 56.1 at ¶ 11.

---

[2] A copy of the alleged termination notice was attached to the Declaration of Jose Rojas as Ex. B. Dkt. 67-2. On the

Plaintiff states that he called the Union for help later that morning. *Id.* at ¶ 29. In Plaintiff's account, Plaintiff spoke to Rojas, who told him "They don't like you. How many times do you want to be told? I will not fight your case, it is a waste of time. [W]hat else, I am busy." *Id.* at ¶ 30. Plaintiff then went to the Union offices, where he spoke to Roman. *Id.* at ¶ 31. While Plaintiff was speaking to Roman, Rojas walked into the waiting area and said, "You again. I already told you I would not fight your case. But if you want a meeting, the secretary will tell you the date, although it is a waste of time." *Id.* at ¶¶ 31, 32. Plaintiff also claims that Rojas told him that Rapid Park did not want him to work for them because he was too old and unhealthy. *Id.* at ¶ 33. Plaintiff completed a grievance form and submitted it to the Union. *Id.* at ¶ 34. After he filed his grievance, Roman told Plaintiff that he would receive a letter with a hearing date scheduled sometime in the next two weeks. *Id.* Plaintiff claims that he never received this letter and never received any phone calls from Roman. Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, Dkt. No. 76 ("Pl. 56.1"), at ¶¶ 23, 24, 26.

Plaintiff failed to appear at the June 2, 2015 grievance meeting, although both the Union and Rapid Park representatives appeared. Def. 56.1 at ¶ 29. Plaintiff provided no notice that he would not attend the meeting. *Id.* Plaintiff does not deny that he did not attend the meeting, but states that he did so because he did not receive notice of the meeting. Pl. 56.1 at ¶ 29. Plaintiff claims that on June 4, 2015, he went to the Union offices to ask about his grievance. Romero Decl. at ¶ 42. While at the Union office, he saw Rojas, who said to him angrily, "I told you [a thousand] times I would not fight your case[.] [T]hey don't want you, and I won't oblige them. If you want to make another date, it is a waste of time." *Id.*

At some point after the June 2, 2015 hearing, the Union claims that Rojas directed Roman to schedule a second hearing on Plaintiff's grievance for June 16, 2015. Def. 56.1 at ¶ 30. Roman

---

line for "Employee's Signature" are the typed words "Refused to sign." *Id.*

allegedly prepared and sent out notices of the June 16, 2015 hearing to both Rapid Park and

Plaintiff. *Id.* at ¶ 31. She also claims to have called Plaintiff on June 15, 2015, at 8:26 a.m. at the

phone number listed on his grievance form and to have left a voicemail asking Plaintiff to confirm

his attendance at the hearing. *Id.* at ¶ 33. Plaintiff claims that he never received the letter or any

phone calls from Roman and that he was not given notice of the June 16 hearing date. Pl. 56.1 at

¶ 34. He also states that he visited the Union's offices on June 12, 2015, and that while he was there

Rojas told him not to come back to the Union and that if he returned to the Union's office he could

be arrested for harassment or assault. Romero Decl. at ¶ 43. Rojas denies that he was present at the

Union's office when Plaintiff visited on June 12, 2015. Rojas Decl. at ¶ 10. Plaintiff also claims that

while he was at the Union's offices on June 12, 2015, he spoke with Salvatore Golfo, a business

agent and trustee for the Union, who told him that no one at the Union, including Rojas, would help

him because he had previously made a complaint about the Union. Romero Decl. at ¶ 44. Golfo

allegedly advised Plaintiff that he should go look for another job and not return to the Union. *Id.*

Plaintiff did not attend the grievance hearing on June 16, 2015, nor did he provide notice

that he would not attend. Def. 56.1 at ¶ 34. Plaintiff does not dispute that he did not attend the

meeting but again claims that he never received notice of the meeting. Pl. 56.1 at ¶ 34. On August

6, 2015, Plaintiff filed an unfair labor practice charge against the Union for allegedly failing to

process his grievance regarding his termination from Rapid Park. Def. 56.1 at ¶ 35. Defendant

claims that Rojas subsequently scheduled a third grievance meeting for October 13, 2015, at 10:00

a.m. at the Union's office. *Id.* at ¶ 36. According to the Union, on September 29, 2015, Roman

prepared and mailed notice of the October 13, 2015 meeting to Plaintiff and Rapid Park. *Id.* at ¶ 37.

Roman allegedly sent the notice both to the address which was listed on Plaintiff's grievance form

and to another address that Plaintiff had provided to the Union, which was a P.O. box in Grand

Central Station. *Id.* at ¶ 38. Rojas called Plaintiff on September 29, 2015, and left him a voicemail

advising him that a grievance hearing would be held on October 13, 2015. *Id.* at ¶ 39. Plaintiff

disputes that he ever received a letter or phone call from Roman or Rojas. Pl. 56.1 at ¶¶ 37-40.

On October 5, 2015, the time of the October 13, 2015 hearing was changed to 1:30 p.m. to

accommodate Rapid Park's schedule. Def. 56.1 at ¶ 41. The Union claims that Roman therefore

sent out an additional notice to Plaintiff, both to his address in Queens and to his Grand Central

P.O. box. *Id.* Roman allegedly followed up with reminder telephone calls on October 9, 2015,

leaving messages for Plaintiff on both of his telephone numbers. *Id.* at ¶ 42. Plaintiff disputes that

he received any such letter or telephone call. Pl. 56.1 at ¶¶ 41, 42. Plaintiff once again did not

appear at the October 13, 2015 grievance hearing and did not provide notice to the Union that he

would be unable to attend. Def. 56.1 at ¶ 43. Plaintiff again claims that he did not appear at the

hearing because he did not receive notice that it had been scheduled. Pl. 56.1 ¶ 43. As the result of

Plaintiff's failure to cooperate, the Union claims that it could not proceed further with Plaintiff's

grievance against Rapid Park, as the CBA specifically mandates that "all grievances shall be taken up

and disposed of promptly and . . . unless taken up and followed promptly shall be considered

abandoned by the party asserting the grievance." Def 56.1 at ¶ 5; Rojas Decl. at ¶ 18.

On November 24, 2015, the Regional Director of Region 2 of the National Labor Relations

Board issued a decision dismissing Plaintiff's unfair labor practices charge based on Plaintiff's failure

to cooperate with the Union in connection with the processing of his grievance. Def. 56.1 at ¶ 44.

Plaintiff filed an appeal from the Regional Director's dismissal of his charge with the Office of

Appeals of the National Labor Relations Board. *Id.* at ¶ 45. On December 28, 2015, that office

denied Plaintiff's appeal. *Id.*

Although Plaintiff's complaint also includes a claim against the Union under ERISA for

failure to provide him with certain benefits, the evidence adduced by Plaintiff in support of that

claim is relatively sparse. Plaintiff states that after he was informed by his doctor in June 2015 that

DDS, Inc., the Union's dental insurance provider, would only pay $90 towards a $2000 root canal procedure, he twice went to the Union's offices to "challenge" that determination and that on June 12, 2015, DDS informed him that the Union "had not released" his benefits. Romero Decl. at ¶¶ 38, 42, 43, 48. He also states that during his June 12, 2015 visit to the Union's Welfare Department, he was told that he was not qualified to receive pension benefits because his employers had not made the necessary payments and because he had not been a member of the Union for twenty years. *Id.* at ¶ 46. Plaintiff, however, has not disputed that the Local 272 Welfare Fund and the Local 272 Labor Management Pension Fund, which are the entities responsible for providing dental and pension benefits to Union members, are distinct entities independent from the Union. Def. 56.1 at ¶ 46. Plaintiff has also not denied that he did not follow the Claim Appeal Procedure outlined in the Local 272 Welfare Fund documents to appeal the denial of his dental benefits, as required by the Local 272 Welfare Fund rules. Def. 56.1 at ¶¶ 61, 71.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and he "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses." (citation omitted)). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must construe that party's submissions "liberally and interpret them to raise the strongest arguments that

they suggest." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 536 (2d Cir. 1999) (internal quotation marks and citations omitted). Proceeding *pro se*, however, "does not . . . relieve [the opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-cv-8594 (LAP), 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003).

### III. DISCUSSION

#### a. Plaintiff has adduced sufficient facts to support his breach of the duty of fair representation claim.

"Under federal common law, unions owe their members a duty of fair representation ('DFR'), which derives 'from the union's statutory role as exclusive bargaining agent.'" *Dillard v. SEIU Local 32BJ*, No. 15-cv-4132 (CM), 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (quoting *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 74 (1991)). "The DFR requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Id.* (quoting *Vaca v. Sipes,* 386 U.S. 171, 177 (1967)).

"'[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.'" *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001) (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)). The bar for finding that a union has breached this duty is high. "Judicial review of union action . . . must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998) (internal quotation marks omitted) (alteration in original).

"'[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational.'" *White*, 237 F.3d at 179 (quoting *Air Line Pilots Ass'n Int'l*, 499 U.S. at 67). "This wide range of reasonableness gives the union room to make discretionary decisions and choices,

even if those judgments are ultimately wrong." *Id.* (internal quotation marks and citations omitted). "A union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)). "'A union acts in bad faith when it acts with an improper intent, purpose, or motive." *Spellacy*, 156 F.3d at 126. Moreover, "[a] showing of '[b]ad faith requires a showing of fraudulent, deceitful, or dishonest action.'" *White*, 237 F.3d at 179 (quoting *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999)).

Defendant has moved for summary judgment on Plaintiff's duty of fair representation claim on the basis that Plaintiff's failure to cooperate in the processing of his grievance is fatal to his claim. Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, Dkt. No. 69 ("Def. Mem."), at 10. But the question of whether Plaintiff failed to cooperate with the Union in prosecuting his grievance or whether—as he claims—Plaintiff did not attend his grievance hearings because the Union repeatedly failed to notify him of those hearings is a disputed issue of fact. Plaintiff claims that he was never informed of *any* of the hearings, even though the Union attests that it provided him with four different notices. Pl. 56.1 at ¶¶ 23, 24, 26, 34, 37-42. Instead, Plaintiff avers that he was repeatedly informed by Rojas that Rojas would not pursue his grievance and that doing so would be a waste of time. Romero Decl. at ¶ 30 (May 29, 2015 conversation); ¶ 42 (June 4, 2015 conversation); ¶ 43 (June 12, 2015 conversation). Indeed, Plaintiff specifically states that he went to the Union's offices twice between the June 2nd and June 16th hearings, and that—instead of being informed that a new hearing date had been set—he was told that if he returned to the Union's office he could be arrested for harassment or assault. Romero Decl. at ¶¶ 42, 43. While the Union denies that it failed to provide Plaintiff with notice of the hearings or that Rojas told Plaintiff he would not pursue the grievances, that disagreement regarding the underlying

facts renders this claim inappropriate for summary judgment.  *See Leavey v. Int'l Bhd. of Teamsters-Theatrical Teamsters Local Union No. 817*, No. 13-cv-0705 (NSR), 2015 WL 5802901, at *13 (S.D.N.Y. Oct. 5, 2015) (denying summary judgment of duty of fair representation claim based on disputed issues of fact).  Were a finder of fact to credit Plaintiff's testimony, it could find that the Union repeatedly failed to provide notice of the hearings to Plaintiff, even though it should have been aware that Plaintiff had not received the initial notice, that Rojas misleadingly told the Plaintiff that he would not pursue his grievance, and that the Union, after failing to provide notice to Plaintiff, then closed Plaintiff's case on the grounds that Plaintiff "failed to cooperate."  On the basis of these facts, a trier of fact might reasonably conclude that the Union acted in bad faith through deceitful or dishonest action.

> **b. Plaintiff's discrimination and retaliation claims are dismissed because Plaintiff has failed to put forth any evidence of discriminatory or retaliatory animus.**

Plaintiff also argues that the Union's failure to act on his behalf was discriminatory and retaliatory.  Although Plaintiff's papers are not entirely clear on this point, the Court assumes that Plaintiff intends to assert that he was discriminated and retaliated against on the basis of his age and health issues, thus raising claims under the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA").[3]  "Section 623(c) [of the ADEA] makes it unlawful for a labor union to exclude or to expel from its membership, or otherwise discriminate against, any individual because of his age."  *Vaughn v. Air Line Pilots Ass'n, Int'l*, 395 B.R. 520, 540 (E.D.N.Y. 2008), *aff'd*, 604 F.3d 703 (2d Cir. 2010), *and aff'd sub nom. Vaughn v. Air Line Pilots Ass'n*, 377 F. App'x 88 (2d Cir. 2010) (internal quotation marks and citation omitted).  Similarly, the ADA

---

[3] The Court also notes that it is not clear that Plaintiff's Second Amended Complaint—which explicitly asserted claims under ERISA and for the breach of the duty of fair representation—was intended to assert claims for discrimination or retaliation.  However, because Plaintiff has raised arguments regarding these claims in his opposition briefing, the Court addresses those claims now.

protects individuals from discrimination by a labor union based on disability. *Perez v. United Fed. of Teachers (UFT) Union*, No. 15-cv-8023 (LAP), 2016 WL 10567967, at *2 (S.D.N.Y. Sept. 30, 2016) (citing 42 U.S.C. §§ 12111(2), 12112). Both ADEA and ADA discrimination and retaliation claims are analyzed under the familiar *McDonnell-Douglas* burden shifting framework. *See, e.g.*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *Spaulding v. N.Y.C. Dep't of Educ.*, No. 12-cv-3041 (KAM) (VMS), 2015 WL 5560286, at *7 (E.D.N.Y. Sept. 21, 2015).

In order to succeed on his discrimination claims under the ADA and ADEA, Plaintiff must, at the first stage of the analysis, "show that (1) the union breached its duty of fair representation, and (2) that the union's actions were motivated by a discriminatory or retaliatory animus." *Holcombe v. U.S. Airways Grp., Inc.*, 976 F. Supp. 2d 326, 338 (E.D.N.Y. 2013); *see also Braxton v. TWU Local 100*, No. 16-cv-9425 (JPO), 2017 WL 6542500, at *2 (S.D.N.Y. Dec. 21, 2017); *Perez*, 2016 WL 10567967, at *2. To establish a *prima facie* case of retaliation under the ADEA or ADA, "plaintiff must show that he participated in a protected activity of which [the union] was aware, and that he suffered an adverse union action as a result, *i.e.*, that there was a causal connection between plaintiff's protected activity and the union's action." *Gaines v. N.Y.C. Transit Auth.*, 528 F. Supp. 2d 135, 149 (E.D.N.Y. 2007), *aff'd*, 353 F. App'x 509 (2d Cir. 2009); *see also Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Ofori-Awuku v. Epic Sec.*, No. 00-cv-1548 (AGS), 2001 WL 180054, at *6 (S.D.N.Y. Feb. 23, 2001) (quoting *Cruz v. Coach*, 202 F.3d 560, 566 (2d Cir. 2000)). If Plaintiff establishes his *prima facie* case of discrimination or retaliation, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. *Gorzynski*, 596 F.3d at 106. Once the Union has provided such a justification, Plaintiff can

no longer rely on his *prima facie* case, but may still prevail if he can show that the Union's determination was in fact the result of discriminatory or retaliatory motives. *Id.* at 106, 110.

Although the Court has found that Plaintiff has raised a triable issue of fact regarding whether the Union breached its duty of fair representation, Plaintiff has put forth no evidence that the Union's actions were motivated by animus towards his protected statuses. The only evidence Plaintiff has adduced that even tangentially relates to this point—that Rojas allegedly told him his employer did not want him because he was "too old and unhealthy"—reflects solely on Rapid Park's motivations, not the Union's. Romero Decl. at ¶ 33. Furthermore, while Plaintiff insists that the Union retaliated against him for complaining to Rapid Park's CEO, his letters bear no relation to any discrimination prohibited by the ADEA or ADA and thus do not constitute protected activity. *See id.* Ex. C. Instead, Plaintiff's letters simply note his complaints related to his sick leave and overtime pay and to the fact that he generally was "treated without respect." *Id.* Accordingly, Defendant's motion for summary judgment on Plaintiff's discrimination and retaliation claims is granted.

### c. Plaintiff's claim for denial of ERISA benefits is dismissed and his motion for leave to amend to add additional parties is denied.

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)) (alterations in original). "ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a person to whom benefits are owed under an ERISA plan may bring a civil action to recover them." *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009). However, "[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 509 (2d Cir. 2002) (quoting

*Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989)).  Under ERISA, the plan

"administrator" is "the person specifically so designated by the terms of the instrument under which

the plan is operated . . . ."  29 U.S.C. § 1002(16)(A)(i).  "Any money judgment . . . against an

employee benefit plan shall be enforceable only against the plan as an entity . . . ."  29 U.S.C.

§ 1132(d)(2).

Plaintiff has not disputed that the dental and pension benefits he seeks are provided through

the Local 272 Welfare Fund and Local 272 Labor Management Pension Fund—both of which are

employee benefit plans governed by ERISA—or that the Union itself has no control or involvement

in the Local 272 Welfare Fund or the Local 272 Labor Management Pension Fund.  Declaration of

Marc Goodman, Dkt. No. 68 ("Goodman Decl."), at ¶¶ 3, 6; Rojas Decl. at ¶ 19.  Accordingly,

Plaintiff has not demonstrated that the Union is an entity which can be held liable for his denial of

benefits claim.  The Union's motion for summary judgment on Plaintiff's ERISA claim is therefore

granted.

As a back-up measure, Plaintiff has requested that—if the Court grants the Union's motion

for summary judgment on his ERISA claims—he be granted leave to amend his complaint to

include appropriate parties.  That application is denied.  The Case Management Plan and Scheduling

Order entered by the Court on November 28, 2016, pursuant to Fed. R. Civ. P. 16, clearly states:

"Any motion to amend or to join additional parties shall be filed within 15 days from the date of this

Order," or December 13, 2016.  Dkt. No. 50.  Plaintiff first sought leave to amend his complaint to

add additional parties in his Opposition to Defendant's Motion for Summary Judgment, which he

filed on June 16, 2017—over seven months after the deadline to file such a motion had passed and

two-and-a-half months after the close of discovery.  Dkt. No. 75 at 12.  Under Fed. R. Civ. P.

16(b)(4), a scheduling order entered under Rule 16 can be modified "only for good cause," and

"[t]he burden of demonstrating good cause rests with the movant."  *Separzadeh v. Iconix Brand Grp.*,

*Inc.*, No. 15-cv-8643 (AT) (JCF), 2016 WL 6126386, at *2 (S.D.N.Y. Oct. 19, 2016) (quoting *Scott v. Chipotle Mexica Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014)).  Plaintiff's decision to raise the issue of amendment in response to Defendant's motion for summary judgment raises serious concerns about delay and prejudice to Defendant.  *See Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 283 F. Supp. 3d 72, 93 (S.D.N.Y. 2017) ("Courts in this Circuit have consistently found prejudice and denied amendments where discovery has already been completed and summary judgment motions have been filed.  Requests to amend are particularly disfavored where the amendment is proposed in response to a summary judgment motion, especially where discovery has already been completed." (internal citation and quotations omitted)).

Although the Court recognizes that Plaintiff's *pro se* status may have hindered his ability to identify the proper defendants for these claims, Plaintiff has offered no explanation whatsoever for his failure to seek leave to amend his complaint to add additional defendants until long after the deadline for such a motion had passed.  To conclude that Plaintiff's *pro se* status *alone* is sufficient to constitute good cause under Fed. R. Civ. P. 16(b)(4) would entirely deprive Rule 16 scheduling orders of their efficacy in any case involving a *pro se* party.  *See Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, No. 07-cv-1178 (JGK) (FM), 2008 WL 781823, at *2-3 (S.D.N.Y. Mar. 20, 2008) (ignoring good cause standard in Rule 16(b) "would render scheduling orders meaningless").

Furthermore, the Court denies Plaintiff's motion to amend his complaint because it concludes that any attempt to add the plans, their administrators, or their trustees as defendants in this action would be futile.  A plaintiff's failure to exhaust administrative remedies is an affirmative defense to an ERISA claim.  *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 445-46 (2d Cir. 2006).  Here, Plaintiff has not denied that he did not follow the Claim Appeal Procedure outlined in the Local 272 Welfare Fund documents to appeal the denial of his dental benefits.  Def. 56.1 ¶¶ at 61, 71.  Nor does Plaintiff assert that he even made an application for pension benefits—or do

anything more than simply ask the Union Welfare Department whether he could receive such benefits. *See* Romero Decl. at ¶ 46; *see also Park v. Trustees of 1199 Seiu Health Care Emps. Pension Fund*, 418 F. Supp. 2d 343, 355 (S.D.N.Y. 2005) (informal inquiry concerning pension rights and subsequent suit by estate in state surrogate's court did not constitute exhaustion of administrative remedies, where no application for benefits had been made or denied and administrative remedies under plan had not been pursued."). Accordingly, because Defendant has demonstrated that Plaintiff failed to exhaust his administrative remedies, Plaintiff's motion for leave to amend is denied. *See Leonelli*, 887 F.2d at 1199 (affirming denial of leave to amend where the plaintiff "made no attempt, as required, to exhaust the administrative remedies provided for under the plan").

## IV. CONCLUSION

For the reasons state above, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court requests that counsel for Defendant mail a copy of this order to Plaintiff and provide Plaintiff with copies of any unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 64.

SO ORDERED.

Dated: September 25, 2019
 New York, New York

_____
GREGORY H. WOODS
United States District Judge